WHETSTONE *v.* CITY OF STUTTGART.

4-4568

Opinion delivered November 2, 1936.

*W. A. Leach,* for appellant.

*Joseph Morrison,* for appellees.

MEHAFFY, J. Stuttgart, a city of the first class, on September 6, 1935, passed an ordinance providing for an election to be held on October 17, 1935, at which election was submitted the proposal to issue the bonds of the city in the sum of $75,000. The bonds, as provided in said ordinance, were to bear interest from November 1, 1935, and the first maturity was to be November 1, 1938, and the last maturity to be November 1, 1949. The proposal was adopted by a majority of the votes and it was so proclaimed.

No bonds have yet been signed, dated, or sold. On October 5, 1936, the appellant, F. O. Whetstone, brought suit against the appellees to prevent the appellees from issuing or attempting to sell any of said bonds. He alleged that he was a resident and taxpayer of the city of Stuttgart, and that the appellees were the mayor, the clerk of the city, and the duly qualified and acting members of the city council. He alleges that an election was held pursuant to said ordinance, and that a majority of the votes cast were in favor of said proposal, and that it was declared that said proposal had been adopted and ratified. It is alleged that as a part of proposal as contained in said ordinance, it was provided that of the bonds proposed to be issued, the first twenty, aggregating $10,000, should mature on November 1, 1938; that said bonds were issued under the authority of amendment No. 13, which amendment provides: "Said bonds shall be serial, maturing annually after three years from date of issue, and shall be paid off as they mature, and no bonds issued under the authority of this amendment shall be issued for a longer period than thirty-five years."

It is alleged that the bonds provided for have not yet been issued and that none of the bonds to be issued under said ordinance can mature as required by said constitutional amendment, and that all bonds proposed to be issued to mature on November 1, 1938, must necessarily mature within three years from the date of issue, and that these bonds, if issued, would be void as in violation of the amendment. It is further alleged that the United

States government has agreed to purchase said bonds at their face value. The complaint states that it is the purpose of the city of Stuttgart and the officers of said city to cause said bonds to bear date of November 1, 1935, with the fraudulent intent to offer for sale bonds purporting to have been actually issued on November 1, 1935, when in truth and in fact said bonds will not have been issued until twelve months after said purported date.

All the evidence offered was an agreed statement of facts which was as follows:

"The proposal to issue bonds as contained in said ordinance was submitted to the qualified voters residing within the corporate limits of said city of Stuttgart. Said election, as provided in said ordinance, was held on October 17, 1935; at said election a majority of the votes cast was in favor of said proposal and it was proclaimed that said proposal had been duly adopted.

"The bonds mentioned and described in said ordinance have not been signed by any of the officers of said city of Stuttgart, and have not been executed. Said bonds, when executed, will bear date of November 1, 1935, it being the intention and purpose of said city of Stuttgart and its officers, when said bonds are executed, to date each bond as of November 1, 1935. Said bonds will bear interest from the date of the sale thereof and not from November 1, 1935, by reason of the city requiring the purchaser of said bonds to credit upon said bonds the interest which shall have accrued from November 1, 1935, to the date of sale. That the opinion in the case of *Rhodes* v. *City of Stuttgart,* 192 Ark. 822, 96 S. W. (2d) 101, shall be considered a part of this stipulation.

"That the United States Government has offered, in writing, to bid par for the bonds issued under said ordinance, which bear 4 per cent., and to pay the accrued interest from the date of acceptance by the city of said offer, which is the 31st day of August, 1936."

Attached to the stipulation above set out is a copy of the ordinance.

The court found the issues for the defendants and rendered a decree dismissing the complaint for want of equity. The case is here on appeal.

In the case of *Hargraves* v. *Solomon,* 178 Ark. 11, 9 S. W. (2d) 797, cited by appellant, the ordinance provided that the bonds should be dated July 1, 1927, and that the first maturity should be January 1, 1930. This was less than three years, and the constitutional amendment under the authority of which the bonds were issued, provides that said bonds shall be serial, maturing annually after three years from the date of issue; and from the case cited the ordinance itself provided that the bonds should mature less than three years from the date of issue. The court held that this provision in the amendment was mandatory and that the bonds maturing before three years from the date of their issue were void, and that as the issue of bonds was an entirety, the invalidity of some of them necessarily affects the whole issue.

Appellant calls attention to the case of *Yesler* v. *Seattle,* 1 Wash. 308, 25 Pac. 1014. In that case the court said: "The statute requires that such bonds 'bear the date of their issue,' and it has become a question in this case what the date of issue is, since the bonds were prepared with the date July 1, 1890, and the contract with Harris & Co. requires that the coupons remain intact from that date, although none of the bonds have been delivered, and some of them will not be delivered for many months. In financial parlance the term 'issue' seems to have two phases of meaning. 'Date of issue,' when applied to notes, bonds, etc., of a series, usually means the arbitrary date fixed as the beginning of the term for which they run, without reference to the precise time when convenience or the state of the market may permit of their sale or delivery, and we see no reason why the act of March 26, 1890, should not have that interpretation."

Counsel for appellant has cited several cases. We do not deem it necessary to discuss them because we think the general rule is, as stated in the opinion in the case of *Yesler* v. *Seattle, supra*: "When applied to notes, bonds, etc., of a series usually the arbitrary date fixed as the beginning of the term for which they run, without reference to the precise time when convenience or the state of the market may permit of their sale or de-

livery; the date which the bonds and stocks bear, and not the date when they were actually issued, in the sense of being signed and delivered and put into circulation." 17 C. J. 1130; *Gage* v. *McCord*, 5 Ariz. 227, 51 Pac. 977; *State* v. *Blease*, 95 S. E. 403, 79 S. E. 247.

The only question involved in this case is the meaning of the phrase "date of issue," and that means the date arbitrarily fixed, without reference to the time when the bonds were actually signed or delivered.

The decree of the chancery court is correct, and it is, therefore, affirmed.