Charles D. RAGLAND, Commissioner of Revenues,
State of Arkansas, *v.* ALPHA AVIATION, INC.
and Tom W. and Betty ROGERS

84-214                                              686 S.W.2d 391

Supreme Court of Arkansas
Opinion delivered March 11, 1985
[Supplemental Opinion on Denial of Rehearing April 29, 1985.]

*Kelly S. Jennings,* for appellant.

*Walker & Campbell Law Firm,* by: *Gail Inman-Campbell,* for appellee.

STEELE HAYS, Justice. The single issue presented by this appeal is whether a proposed tax assessment under Ark. Stat. Ann. § 84-4718 (Repl. 1980), if contested, will toll § 84-4715(a), which limits the time in which an assessment can be made to three years.

The appellant, Charles D. Ragland, Commissioner of Revenues, conducted a gross receipts (sales) tax audit of the books and records of appellee, Alpha Aviation, Inc., for the audit period April 1, 1977 through November 30, 1979. The appellant also conducted an individual income tax audit of the appellees, Tom W. and Betty Rogers for the years 1976, 1977, and 1978. Mr. Rogers was the president and majority shareholder of Alpha, and certain deductions involving Alpha were disallowed on Mr. and Mrs. Rogers' individual income tax returns for the years in question. The appellees were sent a notice of proposed assessment as required by § 84-4718(a)[1]. After receipt of the notice the appellees pursued and exhausted the administrative remedies set forth in § 84-4720. At the termination of the administrative proceedings, which was more than three years after appellees had filed their returns, a notice of final assessment was sent to them as provided by § 84-4712 and § 84-4720.

---

[1]§ 84-4718(a). If any taxpayer fails to file any return as required by any State tax law, the Commissioner, from any information in his possession or obtainable by him, may determine the correct amount of tax for the taxable period. If a return has been filed, the Commissioner shall examine the return and make any audit or investigation that he considers necessary. When no return has been filed and the Commissioner determines that there is a tax due for the taxable period, or when a return has been filed and the Commissioner determines that the tax disclosed by the return is less than the tax disclosed by his examination, the Commissioner shall propose the assessment of additional tax plus penalties, as the case may be, and shall give notice of the proposed assessment to the taxpayer. The notice shall explain the basis for the proposed assessment and shall state that a final assessment, as provided by Section 12 [§ 84-4712], will be made if the taxpayer does not protest such proposed assessment as provided at [by] Section 12 [§ 84-4719].

Unsuccessful at the administrative level, appellees filed suit in chancery court pursuant to the provisions of § 84-4721. In a motion for summary judgment, appellees then contended that the term "assessment" as used in § 84-4715(a) actually referred to a notice of *final* assessment. The pertinent section of § 84-4715(a) provides:

> Except as otherwise provided in this Act [§§ 84-4701 —84-4744], no assessment of any tax levied under the State tax law, shall be made after the expiration of three (3) years from the date the return was required to be filed or the date the return was filed, whichever period expires later. The Commissioner shall not begin court proceedings after the expiration of the three (3) year period unless there has been a previous assessment for the collection of the tax.

The appellees argued that under § 84-4715(a) the failure of the appellant to provide a notice of final assessment within three years from the time they filed a return effectively barred the appellant from further collection efforts.

The Chancellor found that appellees received a notice of proposed assessment within the three year statute of limitations. However, he also determined that the term "assessment" as used in § 84-4715(a) meant "final assessment." As the final notice was not sent out until after the three year limitation the Chancellor issued an order abating all tax, penalty or interest assessed against the appellees. The Commissioner has appealed.

It is a general rule of construction that statutes establishing procedures for collection and assessment of taxes will be construed in favor of the government. "[A]s a general rule courts have been tolerant in construing statutes prescribing the procedure for assessment . . . A statute barring the state's right to bring actions for taxes is usually strictly construed in favor of the government." Sutherland, Statutory Construction, (3rd. Rev. 1974) § 66.06; see also 84 C.J.S. Taxation, § 393; *R. J. Reynolds Tobacco v. Carson*, 213 S.W.2d 45 (Tenn. 1948); *Southern Pac. Ry. Co. v. State*, 284 P. 117 (N.M. 1930). "The existence of a time limit beyond

which the government may not sue to recover unpaid taxes is therefore dependent upon some express statutory provision, and provisions limiting the time for the collection of taxes are strictly construed in favor of the government." *Jensen* v. *Fordyce Bath House*, 209 Ark. 478, 190 S.W.2d 977 (1945).

The primary rule in the construction of statutes is to ascertain and give effect to the intention of the legislature. It is the court's duty to look to the whole act and, as far as practicable, to reconcile the different provisions so as to make them consistent, harmonious and sensible. *Shinn* v. *Heath*, 259 Ark. 577, 535 S.W.2d 57 (1976). We also decline an interpretation that results in absurdity or injustice, leads to contradiction, or defeats the plain purpose of the law. *Carter* v. *Bush*, 283 Ark. 16, 677 S.W.2d 837 (1984); *Berry* v. *Gordan*, 237 Ark. 547, 376 S.W.2d 279 (1964).

Considering the Tax Procedure Act (§ 84-4701—§ 84-4744) as a whole, and applying the applicable rules of construction and law, we find that under these circumstances the legislature intended the proposed assessment to toll the statute of limitations.

The limitation statute can serve two purposes. The first limits the time for which a taxpayer must be responsible for answering to an assessment. The notification for such an assessment can be accomplished through either the proposed or final assessment which states the amount owed. The second arises in the situation where a proposed assessment is made. In that case, the proposed assessment fulfills the first purpose; but a final assessment must also be sent out for reasons of certainty and finality. Here, the proposed assessment meets the substantive requirements of the limitations statute, but under the procedural scheme, when a proposed assessment is challenged, there is no provision for a final notice until the termination of the administrative proceedings. It is the obvious result as well as the general rule that the pendency of the hearing must toll the running of the statute, for the final assessment.

In this case an "assessment" defined in the statute as a "determination and imposition of the amount of any state

taxes due and owing" [§ 84-4703(a)] had been made within the three year limitation through the proposed assessment sent to appellees. The substance of the requirement was met through the proposed assessment by informing appellees of the Commissioner's action and the deficiency amount assessed. There is no surprise or prejudice to the taxpayer if the statute of limitation is effectively extended under these circumstances. To the contrary, it is only because of the procedure of redress afforded to and pursued by the appellees that the time when a final notice could be sent out was delayed. See Ark. Stat. Ann. § 84-4720. Under § 84-4720 the commissioner is not authorized to send out anything other than a proposed assessment once a taxpayer challenges that assessment under the act. He is not directed to send a final notice until the completion of the administrative proceedings. [§ 84-4720(d)].

As the legislature has provided proceedings for taxpayer redress which would be of uncertain duration, and at the same time given no authorization for a final assessment until the termination of such proceedings, we believe a tolling of the statute was assumed by the drafters of this legislation. Such a statutory scheme by its nature incorporates the analogous and established principle that the pendency of litigation will suspend the running of the statute of limitations. See *Dendy* v. *Greater Damascus Bapt. Church*, 247 Ark. 6, 444 S.W.2d 71 (1969). Where an individual is prevented from exercising his legal remedy by the pendency of legal proceedings, the time during which he is thus prevented should not be counted against him in determining whether limitations have barred his right . . . 54 C.J.S., Limitations of Actions, § 247.

To hold otherwise and adopt the appellees' interpretation would bring about an incongruent result. It would require the Commissioner to anticipate potential protests by a taxpayer, and somehow determine with accuracy and make allowance for the time required by the taxpayer to exhaust all administrative remedies provided under the act, and by calculating backwards from the limitation period, send out the proposed assessment early enough that the final assessment would fall within the three years allowed. Even if that

could be done effectively and consistently, a doubtful assumption at best, contingencies could be expected to arise in many cases to delay the administrative process and prevent the giving of a final notice within the three year period. This interpretation would result in thorough confusion in the collection of taxes and deprive the Commissioner of the three year time period allotted him under our statutes dating back to 1929 in which to file a proposed assessment. (See Act 140 of 1939, § 4, and Act 135 of 1947, § 5). Such an implausible interpretation would put the Commissioner in a most difficult position and would in any case severely reduce the three year time period we think was plainly intended under the act to allow for an assessment on the taxpayer. It could not have been the intent of the legislature to allow the taxpayer to forestall the sending of a final notice past the deadline by protesting and pursuing an administrative remedy.

Appellees submit that § 84-4715(c) provides a means by which the taxpayer and the Commissioner may agree in writing to extend "the time within which the Commissioner may make a final assessment, as provided in Section 12," and, therefore, § 84-4715(a) must be read as referring to the *final* assessment, rather than to the proposed assessment. We reject the argument. The provision is permissive only, allowing an extension by mutual agreement. Its evident intent is to provide a means of extending time limits under the act without forcing the taxpayer to protest. There may be situations where it is advantageous to both side to extend the time limits provided in the act.

We conclude the statute was tolled at the time the appellees initiated their administrative remedies pursuant to § 84-4719 and § 84-4720. The Chancellor was incorrect in his finding that because the final assessment was not sent within three years the Commissioner was precluded from any further tax collection efforts.

Reversed.

HICKMAN, J. and PURTLE, J., dissent.

JOHN I. PURTLE, Justice, dissenting. I understand only enough of the majority opinion to know I disagree with it. The only issue before us, as I understand it, is whether the Commissioner tolled the limitations of Ark. Stat. Ann. § 84-4715(a) by sending the taxpayers notice of proposed assessment pursuant to Ark. Stat. Ann. § 84-4718. I do not believe he did so.

When a statute is plain and unambiguous it needs no interpretation and we cannot seek other aids of interpretation. *Ellison* v. *Oliver,* 147 Ark. 252, 227 S.W. 586 (1921). Statutes and constitutional provisions are considered in the same manner. *Snodgrass* v. *City of Pocahontas,* 189 Ark. 819, 75 S.W.2d 223 (1934). We approach a statute or constitutional provision with the idea that it says that it means and means what it says. *Hargraves* v. *Solomon,* 178 Ark. 11, 9 S.W.2d 797 (1928). We should not be concerned with the wisdom or expediency of the Constitution or legislative enactments. It is our duty to carry out the provisions of the law as indicated by its plain language. *Hargraves* v. *Solomon,* supra. If it becomes necessary to construe a statute, it is our duty to ascertain and give effect to the intention of the legislature. *Shinn* v. *Heath,* 259 Ark. 577, 535 S.W.2d 57 (1976).

We are dealing here with that part of Ark. Stat. Ann. § 84-4715(a) which states: "The Commissioner shall not begin court proceedings after the expiration of the three (3) year period unless there has been a previous assessment for the collection of the tax." The appellant's whole argument appears to be that this statute does not mean what it says or say what it means. The argument boiled down to its simplest form is that "assessment" means "notice of proposed assessment" as described in Ark. Stat. Ann. § 84-4718 (a). Both terms are used in the same act; therefore, they surely have different meanings.

I think Ark. Stat. Ann. § 84-4715 (a) says that the commissioner cannot commence court proceedings unless an *assessment* was made before the expiration of three years. The statute is clear and unambiguous. Therefore, we should

not resort to other aids in interpreting the act.

I would affirm the trial court.

HICKMAN, J. joins in this dissent.

Supplemental Opinion on Denial of Rehearing
April 29, 1985

688 S.W.2d 301

STEELE HAYS, Justice. In this supplemental opinion we address appellee's continued insistence that Ark. Stat. Ann. § 84-4715(a) imposes on the Commissioner of Revenues a duty to issue the *final* assessment within three years or lose the right to pursue further efforts to collect a deficiency in income tax, an issue which has given us considerable difficulty. Restated, the question is whether the legislature intended by § 84-4715(a) to allow three years in which the commissioner could *commence* a challenge to the sufficiency of an income tax return, or to allow three years in which the commissioner must *complete* the process of challenging a return, including any time necessary for administrative review. We held in our opinion on March 11, 1985, that the three year limit applies to the commencement of the process, interpreting the word "assessment," as used in § 84-4715(a), to refer to the *proposed* assessment. Of course, if the process must be *completed* in three years (unless extended by agreement between the commissioner and the taxpayer) then the word "assessment" refers to the *final* assessment.

We adhere to our original position for the reasons stated previously and because we believe the history of our income tax laws supports that conclusion. Our initial income tax legislation, the Income Tax Act of 1929 (Act 118) provided

that if the commissioner determined that an income tax return was deficient he had two years within which to act by giving notice to the taxpayer, who then had thirty days in which to confer with the commissioner "as to the *proposed assessment*." (Our italics.) See Section 26 of Act 118. No other administrative review was provided.

Ten years later, Act 140 of 1939 was adopted amending Act 118. As with Act 118, no other administrative review was provided, except that the taxpayer was given thirty days in which to confer with the commissioner over "the proposed assessment." The 1939 Act, however, did include a provision permitting the taxpayer and the commissioner to extend the time by written agreement. The amendments included a provision increasing the time allowed the commissioner to commence the process from two years to three years. This same limitation of time was included in the provisions of Act 401 of 1979, "The Arkansas Tax Procedure Act."

The 1939 amendment makes it entirely clear the assessment which must occur within the three years is not the *final* assessment, as appellee urges, but the *proposed* assessment, as the amendment uses the identical language used in Act 118, i.e. "The taxpayer against whom such assessment has been made shall have an opportunity within thirty days to confer with the commissioner as to the *proposed assessment*."

When the Tax Procedure Act of 1979 (Act 401) was adopted, this provision allowing three years appeared in restructured form (See § 15) and the rewording failed to make it clear that the assessment referred to is the proposed assessment and not the final assessment. However, nothing in Act 401 suggests there was any intent by the legislature to shorten the three year period which had prevailed over forty years in which the commissioner could commence his challenge to an income tax return by issuing the *proposed* assessment.

The petition for rehearing is denied.